FILED
2017 Oct-20  AM 11:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

DIONNE C. MCKINNEY,      )
                     )
      Plaintiff,      )
                     )
v.                   )    Case No.  1:17-cv-00787-MHH-TMP
                     )
JIMMY KILGORE, et al.,    )
                     )
      Defendants.    )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff has filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983alleging violations of his rights under the Constitution or laws of the United States.  (Doc. 9).  The plaintiff names the following defendants in the amended complaint: Talladega County Sheriff Jimmy Kilgore, Chief Deputy Ken Flowers, Jail Administrator Ron Smith, and Assistant Jail Administrator Jason Shea Brown, Mail Clerk Jo Liner, the Talladega County Commission, and Sargent Scott Murphee.  (*Id.* at 2-4).  The plaintiff seeks monetary, declaratory and injunctive relief.  (*Id.* at 11-12).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

# I. Standard of Review

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government officers or employees. The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or which does not state a claim upon which relief can be granted. *Id.* Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service. *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist. *Id*. at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted. A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

2

678 (2009) (internal quotation marks omitted).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'"  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (alteration incorporated).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  *Jones v. Bock*, 549 U.S. at 215.

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are liberally construed.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).  However, they still must allege factual allegations that "raise a right to relief above the speculative level."  *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II. Procedural History

On June 2, 2017, the plaintiff was notified that his complaint was deficient and was directed to correct the deficiencies within twenty (20) days of the entry date of the order in the following manner:

> The plaintiff has failed to set forth his claims adequately.  The plaintiff must amend his complaint by completing a new § 1983 complaint form.  The new complaint must be labeled "**Amended**

3

**Complaint**" and "**Case No.** 1:17-cv-00787-MHH-TMP" must be written on the first page.

In the amended complaint, the plaintiff must provide the complete names of all defendants or as much of the names as known, and any identifying information (such as gender, race, approximate age, job title or position), and a complete address for each defendant. The plaintiff should name as defendants only those persons who violated his constitutional rights. The plaintiff must identify those persons as defendants both in the heading and in Part I.B. of the complaint.

Although the plaintiff has provided some allegations to support his claims, he has not stated clearly how each named defendant violated his constitutional rights, the date(s) on which the incident(s) occurred, and where the incident(s) occurred. The plaintiff must clearly set forth the <u>facts</u> that support his claims against the defendants. The plaintiff is **ADVISED** that conclusory and general assertions are not sufficient to state a claim upon which relief under § 1983 can be granted. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

The amended complaint must include all of the plaintiff's claims in this action; IT SHOULD NOT REFER BACK TO THE ORIGINAL COMPLAINT. The plaintiff is **ADVISED** that the Court will consider <u>only</u> the claims set forth in the amended complaint. After completing the new complaint form, the plaintiff should mail it to the Clerk of the Court.

(Doc. 6 at 1-2).

On June 14, 2017, the plaintiff filed an amended complaint (doc. 9), which is the operative complaint for purposes of this report and recommendation.

### III. Factual Allegations

On March 21, 2017, the plaintiff claims defendants Kilgore, Flowers, Smith and Brown "unreasonably seized" and "detained" him in violation of the" Fourth

4

Amendment, and punished him as a pre-trial detainee without due process of law in violation of the Fourteenth Amendment. (Doc. 9 at 6). He provides no factual allegations in support of this claim.

Additionally, and pursuant to the policies and procedures of defendants "Kilgore and Flowers, as implemented by defendant Brown and Smith," the plaintiff has "been inside the [Talladega County] jail without outside air, and nature of the environment, the sun, and outside exercises" since his initial detention. (*Id.*). Yet "the women and trustees" get to go outside. (*Id.*).

The plaintiff asked "to go outside like the girls[,] all the way outside one hour a day[t]o get fresh air and sunlight." (*Id.* at 10). Defendant Murphee responded, "You have sunlight through the window of your cell [and] sky light in [the] dayroom. You get fresh air on the indoor rec[reation] yard." (*Id.*). The plaintiff asserts it is impossible for him to get sunlight in "Delta (113)" because of the position of surrounding buildings, "impossible" to get direct sunlight in the dayroom because of frosted glass, and impossible in "an inside recreation room." (*Id.*).

On April 10, 2017, the plaintiff submitted a request to visit the law library regarding his legal work. (*Id*. at 7). Around May 17, 2017, the Mail Room Clerk Jo Liner used a "check list" to reject letters "with a certain amount of photos, birthday cards, [and] legal mail" after opening them. (*Id.*). The plaintiff declares

this violates his First Amendment correspondence rights and his right to be free from censorship. (*Id.*).   The plaintiff asserts he also has a liberty interest to have mail related to legal proceedings sent "postage pre-paid by certified mail," and the failure of defendants Liner, Brown, Flowers and Kilgore to do so violates his Fourteenth Amendment procedural and substantive due process rights. (*Id.* at 8).

## IV. Analysis

**A.     The Talladega County Commission**

The plaintiff names the Talladega County Commission as a defendant. However, he makes no allegations against the Commission in the body of his complaint.   Neither the county commission nor its individual members are responsible for the day-to-day operation of the jail.   Under Alabama law, "an Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail." *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1288 (11th Cir. 1998).   "Alabama counties have no duties with respect to the daily operation of the county jails and no authority to dictate how the jails are run." *Id.* at 1291.   "Alabama counties [also] are not liable under theory of *respondeat superior* for a sheriff's official acts that are tortious." *McMillian v. Monroe County*, *Ala.*, 520 U.S. 781, 789 (1997).   Accordingly, the plaintiff's claims against the Talladega County Commission are due to be dismissed.

**B.     Sovereign Immunity**

A law "suit against the State [of Alabama] and its [agencies is] barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937)).  No such consent can "be given under Art. I,  Sec. 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." *Id.*; *see also*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984).

A county "'sheriff [and his deputies are] employee[s] of the state, rather than the county.'" *Haywood v. Alexander*, 121 So. 3d 972, 978 (Ala. 2013) (quoting *Hereford v. Jefferson County*, 586 So.2d 209, 210 (Ala.1991) (additional internal quotation omitted)); *Ex parte Walker*, 97 So. 3d 747, 749 (Ala. 2012). Accordingly, Eleventh Amendment immunity prohibits the plaintiff's suit against Kilgore, Flowers, Smith, Brown, Liner, and Murphee in their *official* capacities, and the claims are due to be dismissed.

**C.     Unreasonable Seizure and Detention**

On March 21, 2017, the plaintiff alleges he was "unreasonably seized" and "detained" in violation of the Fourth Amendment and punished as a pre-trial

detainee without due process of law in violation of the Fourteenth Amendment by defendants Kilgore, Flowers, Smith and Brown.  (Doc. 9 at 6).  He provides no factual allegations in support of this claim.  Conclusory and general assertions are not sufficient to state a claim upon which relief under § 1983 can be granted.  *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Accordingly, the plaintiff's unreasonable seizure and detention claims against defendants Kilgore, Flowers, Smith and Brown are due to be dismissed.

**D.      Outdoor Exercise and Air**

**1.      Cruel and unusual punishment**

The plaintiff claims the Fourteenth Amendment requires he be given one hour of outdoor recreation time every 24 hours and refusal to allow it has subjected him to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.  (Doc. 9 at 6, 10).  The plaintiff is a pretrial detainee.  (*Id.* at 5). "'Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause[.]'"   *Williams v. South Fulton Regional Jail*, 152 Fed. Appx. 862, 863 n.2 (11th Cir. 2005) (quoting *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996)).

Generally, there is no difference in the eighth amendment standard applied to convicted prisoners and the fourteenth amendment standard applied to pre-trial

detainees, *id*. ("[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care, the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons[.]" (quoting *Hamm v. DeKalb Cty*, 774 F.2d 1567, 1574 (11th Cir. 1985)); however, pretrial detainees are afforded an additional protection that conditions of confinement cannot be imposed as punishment; but must be 'reasonably related to a legitimate governmental objective.'" *Hamm*, 774 F.2d at 1574.

To establish a claim under either the Eighth or Fourteenth Amendment, a plaintiff must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering (i.e., was cruel and unusual), (2) the defendants' "deliberate indifference" to that condition, and (3) causation. *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (internal citations omitted). Whether a particular condition of confinement constituted cruel and unusual punishment is an objective inquiry and whether prison officials were deliberately indifferent to that condition is a subjective inquiry. *Id.* at 1535 n. 17 (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)).

Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). While it is the duty of prison officials to

furnish prisoners with "reasonably adequate" food, clothing, shelter, and sanitation, *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977), *rev'd in part on other grounds*, 438 U.S. 781 (1978), the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1982).  "[T]he Constitution does not require that prisoners be provided any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration." *Newnan*, 559 F.2d at 291.  While jail officials may not impose harsh conditions for the purpose of punishment, harsh or restrictive conditions that are reasonably related to the institutional security needs and order of the jail are not unconstitutional.

"To be deliberately indifferent, a prison official must knowingly or recklessly disregard an inmate's basic needs."  *LaMarca*, 995 F.2d at 1535.  To establish an official was deliberately indifferent, "a plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'"  *Id*. at 1535 (quoting *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986)).

There is no *per se* constitutional right guaranteeing pretrial detainees

outdoor exercise. *Jones v. Diamond,* 594 F.2d 997, 1013 (5th Cir. 1979));[1] *see also Wilson v. Blankenship*, 163 F.3d 1284, 1292 (11th Cir. 1998) (stating due process does "not require that every pretrial detainee have an automatic constitutional right to outdoor exercise, and continuous incarceration is distinct from brief detention periods.").

> In analyzing confinement conditions about which a pretrial detainee complains, a court must decide whether the detention officials intentionally imposed the restriction for a punitive purpose or whether it is reasonably incidental to a legitimate government objective. "If a restriction is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court may infer that the purpose of the government action is punishment." Additionally, our court evaluates particular pretrial detainee complaints against the *totality* of confinement conditions to determine if there is constitutional deficiency.

*Wilson*, 163 F.3d at 1292 (internal citations omitted).

Admittedly, the inmate in *Wilson,* 163 F.3d at 1287, was incarcerated as a pretrial detainee for approximately three and a half months, while the plaintiff has been incarcerated for approximately seven months. Nonetheless, for the reasons that follow, the plaintiff still has failed to state a constitutional claim.

The plaintiff is not restricted to his cell and does not contend he cannot exercise in his own cell, the indoor recreation room, or the dayroom. Although the dayroom skylight contains frosted glass, the plaintiff does not deny that it supplies

---

[1] *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting all Fifth Circuit case law handed down prior to October 1, 1981).

some natural sunlight.  While he desires fresh outdoor air, he does not dispute that there is fresh air in the indoor dayroom and alleges no facts from which it can be determined that the jail's heating, air, or ventilation system deprives him of this basic necessity, or is anything other than reasonably adequate.  This is all that is required for Fourteenth Amendment purposes.  *See Wilson*, 163 F.3d at 1292. Finally, the plaintiff does not allege any facts to suggest the refusal to allow him outside exercise is punishment.

For the these reasons, the plaintiff has failed to state an Eighth or Fourteenth Amendment claim against defendants Kilgore, Flowers, Brown, Smith and Murphee  based on his allegations concerning outdoor exercise and fresh air. This claim is due to be dismissed.

### 2.    Equal Protection

The plaintiff claims defendants Kilgore and Flowers created and defendants Brown and Smith implement a discriminatory outdoor exercise policy because "women and trustees" are allowed to go outside while he, a male pretrial detainee, is not allowed to go outside.  (Doc. 9 at 6, 10).  He declares the policy violates his Fourteenth Amendment Equal Protection right.  (*Id.* at 6).

 "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based

on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Secretary, Dept. of Corr.*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)).

Because the plaintiff is a pretrial detainee, he is not similarly situated to jail trustees. By definition, trustees are those prisoners and detainees who have demonstrated that they may be trusted to carry out tasks assigned to them with an appropriate level of freedom associated with such tasks. Not every pretrial detainee has demonstrated such trustworthiness. As such he has failed to allege facts stating a plausible equal protection claim to the extent he contends the defendants' policy allows trustees outside exercise but does not allow male pretrial detainees or convicted prisoners to do so.

The plaintiff also claims the defendants' policy discriminates against him on the basis of sex, as he alleges women are allowed outside exercise while he is precluded from doing so. However, the plaintiff does not describe the offense he has been charged with or his jail behavior, and does not allege that all of the women in the jail are allowed outside exercise regardless of the nature of their crimes, status as a pretrial detainee or convicted prisoner or jail behavior. Without pleading facts to show plausibly that he is similarly situated to those prisoners allowed outside, the mere fact that such prisoners are women does not necessarily

demonstrate unequal treatment.  Finally, he does not allege that the trustees who are allowed outside are exclusively female.  As such, he not alleged facts to plausibly suggest that he is similarly situated to the women he sees in the outside exercise yard, much less facts to state the defendants' policy discriminates against him solely on the basis of his sex.

The plaintiff's factual allegations do suggest, however, that no male inmates other than male trustees are allowed outside exercise.  "A showing of a disproportionate impact alone is not sufficient to prove discriminatory intent unless no other reasonable inference can be drawn." *McCleskey v. Kemp*, 753 F.2d 877, 892 (11th Cir. 1985) *aff'd*, 481 U.S. 279 (1987) (*Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 264-66 (1977)).  Since the women utilizing the outdoor exercise yard are necessarily pretrial detainees or convicted prisoners with various charges, convictions and jail behavior records, and no male inmates are allowed outside exercise unless they are trustees, the only reasonable inference that can be drawn is that regardless of their charges, convictions or behavior in jail, male pretrial detainees and convicted prisoners are intentionally refused outdoor exercise while women who might bear the same characteristics and status are allowed to do so.  Such a scenario suggests discriminatory intent based upon sex.  Accordingly, defendants Kilgore, Flowers,

Brown and Smith should be directed to respond to the plaintiff's Equal Protection claim against them.

**E.     Mail**

**1.     Correspondence and Censorship Rights**

Around May 17, 2017, the Mail Room Clerk Jo Liner "applied her own personal prejudices and opinions" when she used a "check list" to authorize the rejection of letters "with a certain amount of photos, birthday cards, [and] legal mail" after opening them.  (Doc. 9 at 7).  The plaintiff claims Liner violated his First Amendment correspondence rights and his right to be free from censorship. (*Id*. at 7-8).  The plaintiff's allegations are somewhat vague because he does not indicate the number of letters at issue, identify whether the letter(s) were being mailed or received, or reveal the exact contents of each envelope opened.  Nor does he explain the nature of Liner's purported personal prejudices and opinions or describe the check list criteria she used.   At best, the allegations suggest Liner rejected some of the letters based solely on the *quantity* of photos, birthday cards, or legal paperwork contained in them.

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution.  Hence, for example, prisoners retain the constitutional right to petition the government for the redress of grievances. . ."

*Turner v. Safley*, 482 U.S. 78, 84 (1987) (quoting *Johnson v. Avery,* 393 U.S. 483 (1969)).   "'Freedom of speech" is "'protected by the First Amendment'" and is "'among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action.'"   *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 570–71 (1942) (quoting *Lovell v. City of Griffin*, 303 U.S. 444, 450 (1938)).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.  In our view, such a standard is necessary if 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.'"   *Turner v. Safley*, 482 U.S. 78, 89 (1987) (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128 (1977)).

The plaintiff has alleged a plausible First Amendment claims against Liner because she utilized a policy (the check list) to reject letters containing photographs, birthday cards and legal correspondence based on quantity.  There are no facts alleged from which an inference can be drawn that her actions were reasonably related to legitimate penological interest. Liner should be directed to respond to the claim.

### 2.      Postage Pre-Paid Certified Mail to send Legal Correspondence

The plaintiff declares he has a liberty interest in having mail related to legal proceedings sent "postage pre-paid by certified mail" and the failure of defendants Liner, Brown, Flowers and Kilgore to do so violates his Fourteenth Amendment procedural due process rights.  (*Id.* at 8).  To the extent the plaintiff is claiming that the defendants must provide him not only free postage to send legal correspondence, but also to do by certified mail, he has failed to state a claim upon which relief can be granted.

While "it is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them" *Bounds v. Smith*, 430 U.S. 817, 824–25 (1977), the plaintiff does not allege that he is so indigent that he is unable to purchase stamps or, if he is that indigent he does not allege defendant Liner refused to provide him stamps to mail his legal correspondence. There is no Supreme Court or Eleventh Circuit precedent requiring prison officials to send an inmate's legal correspondence by certified mail, whether the inmate is able to pay for that service or not.

Moreover, the plaintiff has not shown that the he has standing to seek redress for the alleged violation.  Article III of the United States Constitution limits the jurisdiction of the federal courts to actual "cases" and "controversies."   U.S.

17

Const. art. III, § 2, cl. 1.  *See Florida Right to Life, Inc. v. Lamar*, 273 F.3d 1318 (11th Cir. 2001).  The case-or-controversy element of Article III requires that a plaintiff have "standing."  *Id.*  To prove standing, a plaintiff must show "(1) that he has suffered an actual or threatened injury, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable ruling."  *Id.* at 1322 (quoting *Harris v. Evans,* 20 F.3d 1118, 1121 (11th Cir.1994) (*en banc*)).  In the present case, the plaintiff has pleaded no facts to show he suffered an actual or threatened injury because defendant Liner refused to send his legal correspondence via certified mail as opposed to regular post, such as a denial of meaningful access to the courts. Accordingly, this claim is due to be dismissed.

## F.  Access to the Courts

"It is . . . clearly established that prisoners have a constitutional right of access to the courts."  *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006). However, the right of access to the courts as defined in *Bounds v. Smith*, 430 U.S. 817, 825 (1977), requires only that inmates be provided with some reasonable means by which they may bring their legal claims before the court.  This can be accomplished by one of several alternatives, including the appointment of counsel, providing the assistance of other persons trained in the law, or providing access to a law library.  It must be emphasized that these are all *alternative* ways of

guaranteeing a prisoner's right of access to the court; they are not cumulative of one another. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). For example, an inmate represented by an attorney does not also have the right to have access to a law library.

Furthermore, our courts have made it clear that inmates "have no inherent or independent right of access to a law library or to legal assistance" but instead "must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998). Because there is no freestanding right to a law library or legal assistance, "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, *supra*, 518 U.S. at 351. In other words, the plaintiff must provide evidence of actual prejudice, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from the actions of jail officials. The naked allegation that a plaintiff has been denied access to a particular law book is not sufficient to state a claim. *See Sabors v. Delano*, 100 F. 3d 82, 84 (8th Cir. 1996).

The plaintiff alleges the defendants have not reasonably accommodated his request to conduct legal work and pursue lawsuits. Such a conclusory allegation is

insufficient to state a plausible access to courts claim.  *See Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984) ("a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."). This claim is due to be dismissed.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** all claims in this action, except the Fourteenth Amendment equal protection claim Kilgore, Flowers, Brown and Smith for creating and implementing a discriminatory outdoor exercise policy on the basis of sex, and the First and Fourteenth Amendment claim against defendant Liner for rejecting the plaintiff's letters be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon which relief can be granted.  The undersigned **FURTHER RECOMMENDS** the remaining claims be **REFERRED** to the undersigned for further proceedings.

## VI. Notice of Right to Object

The plaintiff may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection.

Failure to object to factual findings will bar later review of those findings, except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013). Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

On receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge. The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. The plaintiff may only appeal from a final judgment entered by a district judge.

DONE this 20th day of October, 2017.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE